2025-1364, 2025-1365, 2025-1430

# United States Court of Appeals for the Federal Circuit

**DIGITAL BROADCASTING SOLUTIONS, LLC,**
*Appellant*

**v.**

**DISH NETWORK L.L.C., DISH TECHNOLOGIES L.L.C.,**
*Cross-Appellants*

Appeal from the United States Patent and Trademark Office in *Inter Partes* Review Nos. IPR2023-00976 and IPR2023-00977

## RESPONSE AND REPLY BRIEF OF APPELLANT DIGITAL BROADCASTING SOLUTIONS, LLC


*<u>/s/ Fred I. Williams</u>*
Fred I. Williams
*Principal Attorney*
WILLIAMS SIMONS & LANDIS PC
The Littlefield Building
106 East Sixth Street, Suite 900-168
Austin, TX 78701
512.543.1354 telephone
fwilliams@wsltrial.com

John Wittenzellner
WILLIAMS SIMONS & LANDIS PC
1735 Market Street, Suite A#453
Philadelphia, PA 19103
512.543.1373 telephone
johnw@wsltrial.com


September 5, 2025

COUNSEL FOR DIGITAL BROADCASTING SOLUTIONS, LLC

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1364

**Short Case Caption** Digital Broadcasting Solutions, LLC v. DISH Networks L.L.C.

**Filing Party/Entity** Digital Broadcasting Solutions, LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/05/2025

Signature: /s/ Fred I. Williams

Name: Fred I. Williams

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Digital Broadcasting Solutions, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Mark E. J. McCarthy of Williams Simons & Landis PLLC | Todd E. Landis | Michael J. Fagan, Jr. |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

I. SUMMARY OF THE ARGUMENT ........................................................ 1

II. ARGUMENT ........................................................................................ 2

A. ’122 Patent: The Board Erred In Determining That The Cited Art Renders Obvious The “Third Command” Limitation. ......................... 2

1. DBS raised DISH’s failure of proof regarding the “third command.” ......................................................................... 3

2. DISH misrepresents DBS’s argument regarding DVRs that merely record two or more programs received at different times. ......................................................................... 5

3. DBS did not “forfeit” its argument by not seeking to construe the undisputed plain language of the claims. ............................. 6

4. The cited art does not teach or suggest the “third command.” ......................................................................... 8

B. ’710 and ’122 Patents: The Board Erred In Determining That The Cited Art Renders Obvious The “First Command” Limitation. ......... 10

1. The Board incorrectly construed the “first command.” ........... 10

2. *Casagrande* does not teach or suggest the properly construed “first command.” ....................................................... 14

C. ’122 Patent: The Board Erred In Determining That *Casagrande* And *Russ* Render Obvious The “At Least One Processor Configured To . . .” Limitation. ................................................. 16

1. The Board incorrectly found that *Casagrande* and *Russ* teach or suggest the relationship between the “first command” and the “second command” in limitation 1[d][iii]. ......................... 16

2. *Casagrande* and *Russ* do not teach or suggest that the “second portion” (e.g., a commercial) is both skippable and non-skippable depending on time, as claim element 1[d] requires. ....................................................................... 21

D. ’710 Patent: The Board Erred In Determining That *Casagrande* and *Russ* Render Obvious The Independent Claims. ..........................24

E. ’710 Patent: The Board Erred In Determining That *Dow* and *Russ* Render Obvious The Independent Claims. ........................................24

1. The Board erred in determining that *Dow* and *Russ* render obvious limitation 1[d][i]. ........................................................24

2. *Dow* and *Russ* do not teach or suggest that the “second portion” (e.g., a commercial) is both skippable and non-skippable depending on time. ..................................................29

F. ’710 Patent: The Board’s Finding That DISH Has Not Met Its Burden Regarding The Unpatentability Of Dependent Claim 17 Is Supported By Substantial Evidence. ..................................................32

III. CONCLUSION AND RELIEF SOUGHT ..................................................37

## TABLE OF AUTHORITIES

**Cases**

*AlterWAN, Inc. v. Amazon.com, Inc.*,
63 F.4th 18 (Fed. Cir. 2023) ....................12

*AMP Plus, Inc. v. DMF, Inc.*,
131 F.4th 1320 (Fed. Cir. 2025) ....................36

*CRFD Research, Inc. v. Matal*,
876 F.3d 1330 (Fed. Cir. 2017) ....................36

*Google LLC v. Ecofactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ....................7

*Google LLC v. IPA Techs. Inc.*,
34 F.4th 1081 (Fed. Cir. 2022) ....................32

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................7

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) .................... 27, 35

*In re Suitco Surface*, Inc.,
603 F.3d 1255 (Fed. Cir. 2010) ....................14

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................37

*Interactive Gift Exp., Inv. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ....................16

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................35

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
545 F.3d 1340 (Fed. Cir. 2008) ....................6

*M & K Holdings, Inc. v. Samsung Elecs. Co.*,
985 F.3d 1376 (Fed. Cir. 2021) ....................24

*Netflix, Inc. v. DivX, LLC*,
84 F.4th 1371 (Fed. Cir. 2023) .............................................................. 20, 32, 37

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
38 F.4th 1013 (Fed. Cir. 2022) ..................................................................... 13, 14

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
778 F.3d 1021 (Fed. Cir. 2015) .........................................................................27

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..........................................................12

*SAS Inst., Inc. v. Iancu*,
584 U.S. 367 (2018)..........................................................................................26

*Uniloc 2017 LLC v. Netflix, Inc.*,
2022 U.S. App. LEXIS 34595 (Fed. Cir. Dec. 15, 2022) (nonprecedential) .......16

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
853 F.3d 1272 (Fed. Cir. 2017) .........................................................................20

*Yita LLC v. MacNeil IP LLC*,
69 F.4th 1356 (Fed. Cir. 2023) ..........................................................................20

**Statutes**

35 U.S.C. § 316 ....................................................................................................32

## I. SUMMARY OF THE ARGUMENT

The parties agree that the claims of the ’122 Patent recite a “third command” that triggers reception and storage of two or more video programs—where the video programs are:

(i) “transmitted at the same time;”

(ii) “transmitted on the same single channel;” and

(iii) received on the same “tuner.”

*See* Opening Br., p. 12; Resp. Br., p. 16. In view of those significant requirements, the single-sentence analysis in DISH’s Petition is facially insufficient:

> Regarding the claimed “third command,” Casagrande’s discloses “user input 1523 directing the operation of the receiving device 1510” (Ex[1006], 18:54-60; Ex[1002] ¶126) the operations including “receiving device 1510, by way of the control logic 1520, [] configured to receive the first A/V stream 1504…and store the A/V stream 1504 in the storage unit 1516.” Ex[1006], 18:64-67; Ex[1002] ¶126.

Appx1789. The Board’s decision was equally superficial and divorced from the claim language.

Faced with that reality, DISH improperly adopts two tactics. First, DISH misrepresents to the Court that DBS never presented arguments that were presented at every stage of the proceedings below. Second, DISH attempts to rehabilitate its single-sentence analysis on appeal, which is ineffective and improper.

DBS's opening brief showed the errors in the Board's final written decisions for both patents. In response, DISH fails to justify the Board's erroneous claim construction, and fails to identify evidence, let alone substantial evidence, to support the Board's factual findings.

As for dependent claim 17 of the '710 Patent, DISH argues that the Board "improperly conflated obviousness with anticipation" and "ignored DISH's obviousness theory." *See* Resp. Br., pp. 53-59. Neither is true. In reality, the obviousness theory was deficient: DISH failed to explain in its Petition and in its Reply why a POSITA would have understood *Casagrande's* term "separately" to meet the specific timing requirements of claim 17. Appx0250, Appx1224-Appx1225. On appeal, DISH improperly raises new arguments that were never presented to the Board.

## II. ARGUMENT

### A. '122 Patent: The Board Erred In Determining That The Cited Art Renders Obvious The "Third Command" Limitation.

The parties agree that the claimed "third command" (***a single*** command) must trigger reception and storage of "***said plurality*** of video programs"—where the video programs are:

(i) "transmitted at the same time;"

(ii) "transmitted on the same single channel;" and

(iii) received on the same "tuner."

*See* Opening Br., p. 12; Resp. Br., p. 16. In view of those significant requirements, the single-sentence analysis in DISH's Petition is facially insufficient:

> Regarding the claimed "third command," Casagrande's discloses "user input 1523 directing the operation of the receiving device 1510" (Ex[1006], 18:54-60; Ex[1002] ¶126) the operations including "receiving device 1510, by way of the control logic 1520, [] configured to receive the first A/V stream 1504…and store the A/V stream 1504 in the storage unit 1516." Ex[1006], 18:64-67; Ex[1002] ¶126.

Appx1789. The Board's decision was equally superficial and divorced from the claim language.

Faced with that reality, DISH improperly adopts two tactics. First, DISH misrepresents to the Court that DBS never presented arguments that were presented at every stage of the proceedings below. Second, DISH attempts to rehabilitate its single-sentence analysis on appeal, which is ineffective and improper.

**1. DBS raised DISH's failure of proof regarding the "third command."**

DISH misrepresents to the Court that "DBS never argued to the Board that the 'third command' requires the DVR to receive and store two or more video programs 'received at the same time.'" Resp. Br., p. 17. The truth is, however, that DBS repeatedly presented that argument to the Board.

In the Preliminary Patent Owner Response (Appx2278-Appx2339), DBS argued that claim 1 requires that "(i) said plurality of video programs are transmitted <u>at the same time</u> on a single channel within said data distribution system" and that said plurality is received. Appx2289 (emphasis added). In the next sentence, DBS argued that the "DVR is also configured to receive a 'third command' from the user that 'instructs said DVR <u>to receive and store said plurality of video programs</u>.'" Appx2290 (emphasis added). And DBS relied on those exact claim requirements to show that *Casagrande* fails to disclose the "third command" limitation:

> But the claimed "third command instructs said DVR to receive and store said <u>plurality</u> of video programs," not only a single program. And the Petition does not content that it would have been obvious to modify *Casagrande* to meet this limitation.

Appx2299.

The same is true in the Patent Owner Response (Appx2427-Appx2486) and Sur-Reply (Appx2601-Appx2628). *See* Appx2437, Appx2448, Appx2615-Appx2616. And a significant portion of oral argument made the same argument:

> We do not deny that the prior art DVRs could record more than one program. They'd be a [*sic*] very little use if they couldn't. But the point is they have to be able to -- or record a plurality of programs based on that single third command. <u>And that plurality of programs must be received in the way dictated or required by the Claim</u> 2 [*sic*].

Appx1663-Appx1664 (53:25-54:4) (emphasis added); *see also* Appx1642-Appx1643 (32:25-33:3).

DISH also misrepresents the oral argument before the Board, claiming that DBS merely argued that the "third command" requires saving multiple programs. *See* Resp. Br., p. 18 (citing Appx1643 (33:4-9, 33:14-22)). In doing so, DISH disregards the preceding context, in which counsel for DBS plainly stated that "[t]he third command required quote, from the claim, third command instructs said DVR to receive and store said plurality of video programs." Appx1642-Appx1643 (32:25-33:1).

### 2. DISH misrepresents DBS's argument regarding DVRs that merely record two or more programs received at different times.

DISH misrepresents to the Court that "DBS then argues—without explanation—that the claim language precludes a DVR that 'could record two or more video programs received at different times' from meeting the 'third command' limitation." *See* Resp. Br., p. 17 (partially quoting Opening Br., p. 12). In doing so, DISH disingenuously omits the word "merely" from DBS's argument:

> As a result, a DVR that merely receives and stores two or more video programs, received at different times, does not meet the claimed "third command."

Opening Br., p. 12 (emphasis added). A DVR that merely receives and stores two or more video programs is not sufficient to render obvious the "third command"

limitation because, as DISH concedes, the "third command" instructs the DVR to receive and store "said plurality of video programs," which is defined in the claim as being, *inter alia*, "transmitted at the same time." *See* Resp. Br., p. 16. Thus, no explanation is necessary, other than reading the plain language of the claim.

**3. DBS did not "forfeit" its argument by not seeking to construe the undisputed plain language of the claims.**

According to DISH, "DBS never argued to the Board that the 'third command' requires the DVR to receive and store two or more video programs 'received at the same time.'" Resp. Br., p. 17. But that requirement is readily apparent in the plain language of each independent claim. *See*, *e.g.*, Appx0198 (claim 1). In fact, DISH does not dispute that each independent claim carries that requirement. *See* Resp. Br., pp. 15-21. Accordingly, even if DBS had been silent on that claim requirement before the Board, that would still not give the Board license to ignore it: claim terms are not interpreted "in a vacuum, devoid of the context of the claim as a whole." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1347 (Fed. Cir. 2008) (emphasis added). Unsurprisingly, DISH cannot cite to any precedent permitting the Board's construction to ignore what is expressly required by the claim language itself. *See* Resp. Br., pp. 15-21.

According to DISH, "the Board did not expressly construe 'third command'" of claim element 1[c]. Resp. Br., p. 19. But the '977 Decision shows otherwise:

> Regarding Patent Owner's arguments pertaining to the 1[c] third command, as discussed above (for limitation 1[b]), we find Petitioner has persuasively shown that Casagrande teaches or suggests the use of a memory device (Fig 15, storage unit 1516) for storing a plurality of video programs because the language of claim 1[c] does not place any limits regarding *how* the plurality of video programs are stored.

Appx0122 (emphasis added). And to the extent that passage is not an express construction of the term "third command," it is an implicit construction that can still be reversed for legal error. *See Google LLC v. Ecofactor, Inc.*, 92 F.4th 1049, 1059 (Fed. Cir. 2024). It is unclear whether the Board (i) ignored the requirement that the "third command instructs said DVR to receive and store said plurality of video programs" or (ii) construed the limitation to remove the reference to the antecedent for "said plurality of video programs." Regardless, *de novo* review of the Board's decision is appropriate because both alternatives are legal error.

DISH's reliance on *In re Google Tech. Holdings LLC* is misplaced. *See* Resp. Br., pp. 19-20 (quoting *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020)). In that case, the applicant argued for the first time on appeal that a claim term should be given a definition disclosed in the specification (but not recited by the claim itself). *See id*. In contrast, DBS argues here that the Board disregarded the express language of the claim. Accordingly, *In re Google Tech.* is inapposite.

Under DISH's nonsensical reading of *In re Google Tech.*, to avoid forfeiture, the patent owner must request construction of every limitation that is already

expressly recited by the claim itself, just in case the Board ultimately adopts to the contrary, which cannot be the correct reading of *In re Google Tech.*

**4. The cited art does not teach or suggest the "third command."**

The Opening Brief showed that the Petition's analysis of the "third command"—a single sentence—was wholly insufficient to meet DISH's burden of proof. *See* Opening Br., p. 13. After DBS identified that deficiency again in the Patent Owner Response, DISH failed to provide any response in its Reply. *See* Appx0122 ("In Reply, we note Petitioner does not further address the third command with respect to Ground 1 over Casagrande, Russ, and Miller."). The single sentence from the Petition is reproduced below:

> Regarding the claimed "third command," Casagrande's discloses "user input 1523 directing the operation of the receiving device 1510" (Ex[1006], 18:54-60; Ex[1002] ¶126) the operations including "receiving device 1510, by way of the control logic 1520, [] configured to receive the first A/V stream 1504…and store the A/V stream 1504 in the storage unit 1516." Ex[1006], 18:64-67; Ex[1002] ¶126.

Appx1789. DISH's complaint that "DBS has not explained how the combination of *Casagrande*, *Russ*, and *Miller* fails to teach this limitation" (Resp. Br., p. 22) is farcical because the Petition relied solely on *Casagrande* for the "third command." *See* Appx1789. DISH's only answer is to point the Court to the Board's analysis for limitation 1[a][i] ("a tuner for receiving a plurality of video programs . . ."), which

does not provide any reasoning for why a single "third command" would cause the storage of two or more video programs, where the video programs are (i) "transmitted at the same time," (ii) "transmitted on the same single channel," and (iii) received on the same "tuner," regardless of whether such programs are received. *See* Resp. Br., p. 22 (citing Appx111).

DISH also argues that "DBS does not challenge the substantial evidence supporting the Board's finding with respect to the 'third command' that Casagrande 'teaches or suggests the use of a memory device . . . for storing a ***plurality*** of video programs.'" Resp. Br., p. 22 (emphasis in original). That is true—DVRs would be of limited use if they were single-use devices capable of recording only one video program. But the ability to record more than one program, at different times or otherwise, is irrelevant to the claims. The claims require that a single "third command" cause the storage of two or more video programs, where the video programs are (i) "transmitted at the same time," (ii) "transmitted on the same single channel," and (iii) received on the same "tuner." Not only is this feature not recited in *Casagrande* or *Miller*, but the evidence illustrates that doing so is counterintuitive and therefore nonobvious. Opening Br. at 16-17.

DISH failed to make the requisite showing in its single-sentence analysis of the "third command." Appx1789. As does the Board's finding that the "third command" requires only "a memory device . . . for storing a plurality of video

programs"—not a single command for receiving and storing a plurality of video programs, and not "said plurality of video programs" as required by the claims. *See* Appx0122. And try as it may to rehabilitate its prior failings now, DISH cannot identify record evidence to support the Board's decision. *See* Resp. Br., pp. 22-24. Accordingly, the Board's finding is improper and should be reversed.

### B. '710 and '122 Patents: The Board Erred In Determining That The Cited Art Renders Obvious The "First Command" Limitation.

#### 1. The Board incorrectly construed the "first command."

The "first command" and "second command" are inextricably linked: the "first command" controls how the DVR responds to the later received "second command." *See* Opening Br., pp. 25-26. The "second command" initiating playback of the video program is conditioned on the "first command" setting the playback state. *See id*. DISH provides no rebuttal to that argument. *See* Resp. Br., p. 27. Instead, DISH merely repeats the Board's fabricated scenario regarding "intervening events," which lacks any support in the intrinsic evidence. *See id*.

DBS's Opening Brief identified unresolved questions that result from the Board's erroneous construction of the "first command." *See* Opening Br., p. 27 (*e.g.*, "Would the 'first command' change the playback state of the DVR before or after initiating playback?"). Again it is unsurprising that DISH, like the Board, either ignores or is unable to answer any of these questions: the intrinsic record provides no answers to those questions because the claimed "first command" <u>does not</u> initiate

playback of the video program. DISH's response advances three arguments in support of the Board's erroneous construction.

First, DISH argues that "nothing in the claim language recites a restriction that only the 'second command' is capable of initiating playback." Resp. Br., p. 25. Independent claim 1[1] of the '122 Patent expressly recites that the "first command" changes the playback state of the DVR, but it does not recite that the "first command" initiates playback of the video program. *See* Appx0198 (12:11-14). Instead, independent claim 1 expressly recites that it is the "second command [that] initiates playback of said video program"—playback that is dependent on the playback state set via the "first command." *See id*. Accordingly, construing the "first command" to duplicate the playback functionality that is expressly assigned to the "second command," as the Board did, not only represents a departure from "the language of the claims themselves," which DISH acknowledges is generally improper, but ignores the claimed relationship between the two commands. *See* Resp. Br., p. 25.

DISH maintains that the "inclusive language" of the claim makes it permissible for the Board to construe the "first command" to both change the playback state of the DVR and initiate playback of the video program. *See* Resp.

[1] Independent claims 11 and 18 of the '122 Patent and independent claims 1, 9, and 18 of the '710 Patent recite similar limitations. *See* Appx0185-Appx0186, Appx0199-Appx0200.

Br., pp. 25-27. But "claims must always be read in light of the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (cleaned up). Regardless of the "inclusive language," the intrinsic record does not support the Board's construction—tellingly, DISH provides no citations to the specification as support of the Board's construction. *See* Resp. Br., pp. 24-31.

DISH also argues that it is also permissible to construe each of the "first command" and the "second command" to both change the playback state of the DVR and initiate playback of the video program. *See* Resp. Br., p. 26. But again, there is no support in the specification for that belated construction. And DISH does not cite any portion of the specification to support it. *See* Resp. Br., p. 26. That construction also raises questions that DISH once again wholly ignores (e.g., Would the "second command" change the playback state of the DVR before or after initiating playback?). Further still, it would be illogical for the DVR to have duplicative user commands (i.e., two different commands that result in the DVR performing the exact same steps). This Court has cautioned against such "depart[ures] from common sense in claim construction." *AlterWAN, Inc. v. Amazon.com, Inc.*, 63 F.4th 18, 24 (Fed. Cir. 2023).

Second, DISH argues that the specification does not support DBS's proposed construction. *See* Resp. Br., pp. 27-30. According to DISH, "where the specification is merely silent on a negative limitation, that silence cannot support the negative

limitation." *Id.*, p. 29. That is false as explained by this Court: "While silence will not generally suffice to support a negative claim limitation, there may be circumstances in which it can be established that a skilled artisan would understand a negative limitation to necessarily be present in a disclosure." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1020 (Fed. Cir. 2022). That is the case here because the specification discloses that the "first command" and the "second command" work together to operate the DVR. *See* Opening Br., pp. 28-29 (quoting Appx0197 (9:61-10:14)). The "first command" is used during set-up to program the DVR to control what will and what will not be displayed (e.g., commercials). *See id*. The "second command" is used later, after the user has finished programming the DVR (i.e., after set-up), to initiate playback of the video program. *See id*. DISH does not challenge that showing. *See* Resp. Br., pp. 28-29.

Accordingly, a skilled artisan would necessarily interpret the "first command" as not initiating playback of the video program. It would be illogical for the "first command" to initiate playback because the "first command" is used during setup of the DVR. *See* Opening Br., pp. 28-29 (quoting Appx0197 (9:61-10:14)). Moreover, the same paragraph discloses that it is a different "second command" that initiates playback of the video program.

DISH also appears to argue that negative limitations are <u>only</u> supported when the specification describes a reason to exclude the relevant element. *See* Resp. Br.,

p. 28. But the specification disclosing a reason to exclude the relevant element is only one example of when there is adequate written description for a negative limitation. *See Novartis Pharms. Corp.*, 38 F.4th at 1016.

Third, DISH argues that the open-ended term "comprising" in the preamble supports the Board's construction. *See* Resp. Br., pp. 30-31. But this Court has held that the term "comprising" in the preamble does not give the Board "an unfettered license to interpret claims to embrace anything remotely related to the claimed invention." *In re Suitco Surface*, Inc., 603 F.3d 1255, 1260 (Fed. Cir. 2010). To the contrary, "claims must always be read in light of the specification." *Phillips*, 415 F.3d at 1315 (cleaned up). The specification does not support the Board's construction and DISH provides no citations to the specification that support the Board's construction. *See* Resp. Br., pp. 24-31.

Accordingly, the Board's construction of the "first command" is improper and should be vacated.

#### 2. ***Casagrande* does not teach or suggest the properly construed "first command."**

DISH maintains that under the Board's construction, *Casagrande* teaches the "first command." *See* Resp. Br., pp. 31-32. But as shown above, the Board's

construction is erroneous.[2] *Casagrande* does not teach the "first command" under its proper construction.

Next, DISH argues that even under DBS's proper construction, *Casagrande* still teaches the "first command" "because the [user] selection may be overwritten by the system, [and thus] the user selection does not guarantee that playback of the requested stream is initiated." Resp. Br., p. 32 (citing Appx0741 (19:15-19)). What *Casagrande* actually discloses is

> the user input 1523 may command the receiving device 1510 to output the first A/V stream 1504 to the display device 1514 for presentation. In response, the control logic 1520 <u>instead generates and outputs the second A/V stream</u> 1512.

Appx0741 (19:15-19) (emphasis added). DISH concedes that the "first A/V stream" and the "second A/V stream" in *Casagrande* are two versions of the same video program, with the difference being the removal of commercials. *See* Resp. Br., p. 36 ("The 'second A/V stream' has the interstitials (e.g., commercials) removed from the first A/V stream."). So in that passage from *Casagrande*, at least one version of the video program is still played back. In contrast, under DBS's proper construction, the "first command" does not initiate playback of any version of the video program; it is the claimed "second command" that always initiates playback of the video

[2]Even if the Board's construction is proper, the mappings still result in a "second command" that, contrary to the claims, is unaffected by the "playback state" set by the "first command." *See* Section II.C.1.b.

program. Accordingly, *Casagrande* does not teach the claimed "first command" under DBS's proper construction.

For the foregoing reasons, the Board's determination that the cited art teaches or suggests the claimed "first command" is not supported by substantial evidence.

### C. '122 Patent: The Board Erred In Determining That *Casagrande* And *Russ* Render Obvious The "At Least One Processor Configured To . . ." Limitation.

#### 1. The Board incorrectly found that *Casagrande* and *Russ* teach or suggest the relationship between the "first command" and the "second command" in limitation 1[d][iii].

##### a. DBS did not forfeit its claim construction argument regarding the temporal relationship between the "first command" and the "second command."

According to DISH, DBS's argument regarding the temporal relationship—between the commands because they are named "first" and "second"—was not raised before the Board and thus the argument should be forfeited. *See* Resp. Br., pp. 33-34. But this Court's forfeiture doctrine does not "preclude a party from proffering additional or new supporting arguments, based on evidence of record, for its [existing] claim construction." *Interactive Gift Exp., Inv. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001). *See also Uniloc 2017 LLC v. Netflix, Inc.*, 2022 U.S. App. LEXIS 34595, at *7 n.1 (Fed. Cir. Dec. 15, 2022) (nonprecedential). Here, DBS merely proffers additional support for the claim construction that DBS has always advanced—the DVR receives the "first command" <u>before</u> the DVR

receives the "second command." *See* Appx2441 ('977 Response, p. 9) ("the 'second command' is used to initiate playback of the video program after the playback state of the DVR has been set by the 'first command'") (emphasis added), Appx2451 ('977 Response, p. 19) ("The 'first command' . . . must be received before the 'second command'") (emphasis added), Appx2458 ('977 Response, p. 26) ("the 'first command' . . . must be received before the 'second command'") (emphasis added).

Accordingly, DBS's additional support for its existing claim construction is not forfeited.

**b. The cited art does not teach or suggest the properly construed relationship between the "first command" and the "second command."**

As shown in DBS's Opening Brief, with respect to claim element 1[d][iii] (i.e., the third scenario), the "first command" controls how the DVR responds to the "second command." *See* Opening Brief, pp. 35-36. As a result, the "first command" is received by the DVR at some point before the "second command" is received by the DVR. *See id.* And "before" does not necessarily mean "immediately before." For example, the "first command" may be received by the DVR even before the claimed "second period of time" associated with claim elements 1[d][ii] and 1[d][iii]. DBS has never argued that "before" necessarily means "immediately before." *See id.*

Instead of attempting to rebut those arguments, DISH avoids them and parrots the '977 Decision. *See* Resp. Br., pp. 34-39. For example, quoting the '977 Decision, DISH states that "the switch could be used to set the playback state, which is received by the controller of the DVR . . . the switch could be set to a certain playback state and it <u>could remain at that setting through</u> repeated intervening playback events." Resp. Br., p. 35 (quoting Appx0135-Appx0136) (emphasis added). Although the "first command" (i.e., the switch set to a certain playback state) is received by the DVR <u>before</u> the claimed "second command" (i.e., a playback event), that passage does <u>not</u> prove the lack of a relationship between the "first command" and "second command." To the contrary, each of the "repeated intervening playback events" (i.e., the claimed "second command") is still controlled by the "playback state" initially set by the switch (i.e., the claimed "first command").

Next, DISH does not and cannot show that *Casagrande's* user selection of "the first A/V stream 1504 or the second A/V stream 1512" for output (the Board-identified "first command") is received by the DVR <u>before</u> *Casagrande's* user "selection of particular segments from the selection menu" (the Board-identified "second command") is received by the DVR, as claim element 1[d][iii] requires. *See id.* DISH also does not and cannot show that *Casagrande's* user selection of "the first A/V stream 1504 or the second A/V stream 1512" for output (the Board-identified "first command") <u>controls how the DVR responds</u> to *Casagrande's* user

"selection of particular segments from the selection menu" (the Board-identified "second command"), as claim element 1[d][iii] requires. *See id*.

In fact, *Casagrande's* user selection of "the first A/V stream 1504 or the second A/V stream 1512" for output (the Board-identified "first command") and *Casagrande's* user "selection of particular segments from the selection menu" (the Board-identified "second command") belong to different and unrelated embodiments in *Casagrande*. *Compare* Appx0741 (19:63-66) *with* Appx0733 (4:1-4). DISH does not explain any link between those two embodiments. *See* Resp. Br., pp. 34-39. Accordingly, *Casagrande* does not teach the claimed relationship between the "first command" and "second command.".

Recognizing those shortcomings, DISH introduces an obviousness theory involving a "confirmation dialog" or "confirmation prompt." Resp. Br., p. 38. But that theory was not presented in the '977 Petition. *See* Appx1787-Appx1796, Appx2402-Appx2414. Nor is the dialog/prompt disclosed in *Casagrande*. *See* Resp. Br., p. 38.

DISH first introduced this theory in its Reply Brief by pointing to additional references not filed with the '977 Petition. *See* Appx2579 (citing new exhibits [1016]-[1019]). The Board recognized that the theory significantly deviated from the '977 Petition. Appx1626 (16:8-10). Because a reply brief "may only respond to arguments raised in the preceding brief," without "proceed[ing] in a new direction

with a new approach as compared to the positions taken in a prior filing" (USPTO Consolidated Trial Practice Guide, November 2019, p. 74), the Board properly did not rely on that theory in the '977 Decision. *See generally,* Appx0117-Appx0121.

This Court has "rejected, many times, post-hoc attempts on appeal to include additional, new arguments not contained in the petition." *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1377 (Fed. Cir. 2023) (citing *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1286 (Fed. Cir. 2017) ("We also are unpersuaded by Continental's attempts to cure the petition's deficiencies in its subsequent briefing to the Board and to us."); *Yita LLC v. MacNeil IP LLC*, 69 F.4th 1356, 1366-67 (Fed. Cir. 2023) (agreeing with the Board "declining to consider Yita's argument about modifying the teaching of Rabbe . . . because it was presented too late—in a footnote in Yita's reply brief"). The Court should do the same here, and disregard DISH's alternative theory regarding a "confirmation dialog" or a "confirmation prompt."

Moreover, a "confirmation dialog" or "confirmation prompt" does not resolve the shortcoming in DISH's obviousness argument because *Casagrande's* user selection of "the first A/V stream 1504 or the second A/V stream 1512" for output (the supposed "first command") would have initiated playback, whereas the subsequent dialog/prompt would merely confirm.

Finally, DISH asserts that *Russ* discloses temporal-based trick play. *See* Resp. Br., pp. 38-39. Even if *Russ* did make such a disclosure—*Russ* does not—that still would not address the missing relationship between *Casagrande's* user selection of "the first A/V stream 1504 or the second A/V stream 1512" for output (the supposed "first command") and *Casagrande's* user "selection of particular segments from the selection menu" (the supposed "second command").

Accordingly, the Board's determination that the cited art renders obvious the independent claims of the '122 Patent should be vacated or reversed.

#### 2. ***Casagrande* and *Russ* do not teach or suggest that the "second portion" (e.g., a commercial) is both skippable and non-skippable depending on time, as claim element 1[d] requires.**

DBS's Opening Brief provided a detailed explanation of the teachings of *Russ*, including its "commercial slots" and "tags," which DISH does not challenge. *See* Opening Brief, pp. 37-39; Resp. Br., pp. 39-41. Instead, DISH responds with two arguments. *See* Resp. Br., pp. 39-41.

First, DISH argues that "*Casagrande* already discloses a system where a user may elect to view commercials or not and *Russ* teaches that it would have been obvious to restrict the user's ability to elect to skip the commercials for a period to time." Resp. Br., p. 41 (emphasis added). *Russ* makes no such teaching—in *Russ*, a commercial is either skippable or non-skippable for the entirety of its availability (which ends according to the expiration specified in the commercial's tag). *See*

Opening Br., pp. 37-39. And as shown in DBS's Opening Brief, DISH reads *Russ's* disclosure of "two weeks" out of context. *See id.* at 38-39. *Russ* never discloses a restriction on a commercial that lasts "for a period of time," after which the user can elect to view the commercial or skip the commercial. *See id*. Thus, commercial skipping in *Russ* is commercial-based, not time-based as required. *See id*.

Oddly, DISH argues that "the Petition never relied on *Russ's* commercial replacement scheme." Resp. Br., p. 40. But it is indisputable that the '977 Petition cited to paragraph [0035] of Russ for claim element 1[d]. *See* Appx1791. And *Russ's* "commercial replacement scheme" is exactly what is discussed in that paragraph. *See* Appx0786 (*Russ*, ¶35); Opening Br., pp. 37-41.

<u>Second</u>, DISH argues that "the asserted patents do not draw this distinction between 'commercial based' and 'time based.'" Resp. Br., p. 41. But claim 1 of the '122 Patent expressly requires that the "video program" be displayed "in its entirety" during the "first period of time." Appx0198 (12:17-20). Accordingly, skipping the "second portion" of the "video program" is prohibited during the "first period of time." *See id*. In contrast, during the "second period of time," the "second portion" (i.e., transmitted commercial) of the "video program" can be skipped depending on the "playback state" of the DVR, as set by the user via the "first command." Appx0198 (12:20-35). During the "second period of time," claim 1 requires that (a) the "video program" be displayed "in its entirely" (i.e., no skipping of the second

portion) if the DVR is in the "first playback state" when playback is initiated, and (b) the "third portion" of the "video program" be displayed "immediately following said first portion" (i.e., skipping the second portion) if the DVR is in the "second playback state" when playback is initiated. *See id*. By contrast, Russ's trick play is commercial based (i.e., the commercial is always skippable or never skippable regardless of when playback of the video is initiated).

As discussed in DBS's Opening Brief and before the Board, in *Casagrande*, the ability to skip (or fast forward through) a commercial is (a) commercial based, and (b) set remotely by the content provider. *See*, *e.g.*, Appx0741 (19:63-20:2), Appx2452-Appx2453, Appx2457-Appx2458. The same is true with *Russ*, where the ability to skip (or fast forward through) a commercial is (a) commercial based and (b) set remotely by the cable operator. *See*, *e.g.*, Appx0785 (¶33), Appx2457-Appx2458. Thus, in both *Russ* and *Casagrande* a commercial can either be skipped or not—but it is not skippable only during a "second period of time" as claimed. Further, in both *Russ* and *Casagrande*, it is the ***content provider (or cable operator)*** that determines whether a commercial can be skipped. In contrast, in the claimed invention, it is ***the DVR*** that determines whether the commercial can be skipped ***based on time and playback state***. Appx2457.

Accordingly, the Board's conclusion that the cited art renders obvious the independent claims of the '122 Patent should be vacated or reversed.

### D. ’710 Patent: The Board Erred In Determining That *Casagrande* and *Russ* Render Obvious The Independent Claims.

The cited art fails to teach or suggest claim element 1[d] of the ’710 Patent for all the reasons discussed above in Sections II.B and II.C.

### E. ’710 Patent: The Board Erred In Determining That *Dow* and *Russ* Render Obvious The Independent Claims.

#### 1. The Board erred in determining that *Dow* and *Russ* render obvious limitation 1[d][i].

Claim element 1[d][i] recites “at least one processor configured to (i) provide said video program in its entirety to a display device in response to receiving said second command regardless of a playback state of said DVR if said second command is received during a first period of time.” Appx0185.

##### a. The Board erred by violating the APA with respect to claim element 1[d][i].

According to DISH, “the critical question for compliance with the APA and due process is whether [DBS] received adequate notice of the issues that would be considered, and ultimately resolved, at that hearing.” Resp. Br., 43. This Court has “addressed the issue of notice by asking whether the Board departed markedly from the evidence and theories presented by the petition or institution decision, creating unfair surprise.” *M & K Holdings, Inc. v. Samsung Elecs. Co.*, 985 F.3d 1376, 1384 (Fed. Cir. 2021). In the present case, the Board’s reliance on the combination of *Dow* and *Russ* to teach or suggest claim element 1[d][i] departed from what was

expressly stated in the ’076 Petition, and thus DBS did not have adequate notice in violation of the APA.

The ’976 Petition relied solely on *Dow* to teach or suggest claim element 1[d][i]. *See* Appx0268 (claim “elements not discussed below are disclosed or rendered obvious for the reasons stated above in Ground 2”). Petitioner’s expert also relied solely on *Dow* when discussing claim element 1[d][i]. *See* Appx0437-Appx0438 (¶¶339-341). When challenged by DBS, DISH provided no substantive rebuttal arguments regarding the combination of *Dow* and *Russ* with respect to claim element 1[d][i]. *Compare* Appx1103 (“Petitioner does not contend that it would have been obvious to combine *Dow* and *Russ* to address *Dow’s* failure to disclose limitation 1[d][i]”) *with* Appx1234. The Board acknowledged that the ’976 Petition relied solely on *Dow* to teach or suggest claim element 1[d][i]. Appx0055 (n.17). *See also* Appx0056 (“the Petition states that it relies on the anticipation assertions for this limitation”). Accordingly, DBS did not receive adequate notice that the Board would rely on the combination of *Dow* and *Russ* to teach or suggest claim element 1[d][i].

In support of its position that DBS had adequate notice, DISH points to a section of the ’976 Petition addressing claim element 1[d][ii] (not claim element 1[d][i]) and the Board’s conclusion that because that section had a “reference back to the ‘first time period’ [that] shows that Petitioner relies on the combination of

*Dow* and *Russ* for the teaching of limitation 1[d][i]." Resp. Br., pp. 43-44 (citing Appx0056-Appx0057, Appx0269-Appx0270). But that "reference"—located in a section for a different claim element and contrary to the Petition (i.e., claim "elements not discussed below are disclosed or rendered obvious for the reasons stated above in Ground 2")—is not adequate notice.

Accordingly, the Board's conclusion regarding claim element 1[d][i] and the combination of *Dow* and *Russ* should be vacated or reversed.

**b. The Board erred by deviating from the arguments raised in the '976 Petition.**

DISH argues that "[n]othing in *SAS* suggests, however, that the Board's decisions are limited in the manner that DBS asserts." Resp. Br., p. 45. But the Supreme Court held that the "statute tells us that the <u>petitioner's contentions</u>, not the Director's discretion, define the scope of the litigation <u>all the way</u> from institution through to conclusion." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 367 (2018) (emphasis added). The Petition contains "the petitioner's contentions," and thus those arguments "define the scope of the litigation" at all times. That is why DISH cannot identify any precedent permitting the Board to deviate from the arguments raised in the petition. *See* Resp. Br., pp. 44-45. As explained by this Court, "while the PTO has broad authority to establish procedures for revisiting earlier-granted patents in IPRs, that authority is not so broad that it allows the PTO to raise, address, and decide unpatentability theories never presented by the petitioner and not supported by

record evidence." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016). Accordingly, the Board's conclusion regarding claim element 1[d][i] and the combination of *Dow* and *Russ* should be vacated or reversed.

**c. The Board improperly construed the "first period of time" of claim element 1[d][i].**

DISH's primary argument against DBS's proposed construction of the claimed "first period of time" is that it "would exclude expressly mentioned embodiments" involving the "DVR buffering or storing 'live' content." Resp. Br., pp. 45-49. But "where the patent describes multiple embodiments, every claim does not need to cover every embodiment . . . This is particularly true where the plain language of a limitation of the claim does not appear to cover that embodiment." *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1026 (Fed. Cir. 2015) (emphasis added). That is the case here.

Here, independent claim 1 recites "a memory device for storing said video program, allowing at least a portion of said video program to be played back at a later time . . . a second command initiates playback of said video from said memory device." Appx0185 (11:54-61) (emphasis added). Notably, the claim does not recite storing a part or a portion of "said video program." Instead, the claim recites "storing said video program," meaning it is the entirety of the "video program" that is stored in the "memory device." *See id*. Thus, the claim term "at a later time" means at a time after "storing [the entirety of] said video program." *See id*. Accordingly,

independent claim 1 only covers embodiments where the entire "video program" is stored in the "memory device" and at least a portion of the "video program" is played back "at a later time," which is a time after the entire "video program" has been stored in the "memory device."

As a corollary, if the entire "video program" is stored in the "memory device" of the DVR before playback, then the entire "video program" must have been transmitted to the DVR before playback. That excludes the disclosed embodiments of the DVR buffering or storing "live" content. So even if DBS's proposed construction excludes those embodiments, DBS's construction is proper because the claim language itself supports limiting the claims to only embodiments displaying video programs that have been entirely transmitted to the DVR.

For the aforementioned reasons, the Board's improper construction of the claim term "first period of time" should be vacated.

#### d. *Dow* alone fails to teach or suggest claim element 1[d][i].

As explained in DBS's Opening Brief, the '976 Petition relies on *Dow* alone to teach or suggest claim element 1[d][i]. *See* Opening Brief, pp. 43-47. As also explained in DBS's Opening Brief, under DBS's proper construction, *Dow* alone does not teach or suggest claim element 1[d][i]. *See id.* at 55-57. DISH does not refute those arguments. *See* Resp. Br., pp. 49-53. Accordingly, *Dow* alone does not teach or suggest claim element 1[d][i].

### 2. ***Dow* and *Russ* do not teach or suggest that the "second portion" (e.g., a commercial) is both skippable and non-skippable depending on time.**

According to DISH, "[f]or the same reasons discussed above with regards to *Casagrande* and *Russ*, the Board properly found a POSA would have found these claim limitations obvious in view of *Russ'*s restrictions on trick-play functionality" and "the Petition explained how a POSA would have known to apply *Russ'*s trick-play restrictions to create the claimed 'first period of time' and 'second period of time' in the system of *Dow*." Resp. Br., pp. 50-51. Accordingly, DISH is repeating its assertion that "*Russ* teaches that it would have been obvious to restrict the user's ability to elect to skip the commercials for a period to time." Resp. Br., p. 41 (emphasis added).

As discussed above in Section II.C.2, *Russ* makes no such teaching. A commercial is either skippable or non-skippable for the entirety of its availability (which ends according to the expiration specified in the commercial's tag). *See* Opening Br., pp. 37-39 (explaining Appx0786 (*Russ*, ¶35)). And as shown in DBS's Opening Brief, DISH improperly reads *Russ's* disclosure of "two weeks" out of context. *See id.* at 38-39. *Russ* never discloses a restriction on a commercial that lasts "for a period of time," after which the user can elect to view the commercial or skip the commercial. *See id*. Incorporating *Russ* into the system of *Dow* would not result in claimed "first period of time" and the claimed "second period of time."

Commercial skipping in *Russ* is commercial-based, not time-based as the claims require. *See id*.

Next, in response to DBS asserting that DISH was inconsistent regarding the prior-art mapping for the claimed "first period of time," DISH accuses DBS of "conflat[ing] the *Dow* anticipation and *Dow/Russ* obviousness grounds in the Petition." Resp. Br., p. 50. DISH now asserts that the "Petition's obviousness analysis for the combination of *Dow* and *Russ* [] <u>does not</u> rely on [*Dow's* "live view" or "delayed view"] modes." *Id*. But the "first period of time" is recited by claim element 1[d][i]. Appx0185 (11:66). And as explained in DBS's Opening Brief, instead of providing an obviousness analysis for claim element 1[d][i], the '976 Petition merely stated that claim "elements not discussed below are disclosed or rendered obvious for the reasons stated in Ground 2" (i.e., the *Dow* anticipation ground). *See* Opening Br., pp. 43-47 (citing Appx0268-Appx0273). In Ground 2, DISH mapped a time interval including when *Dow's* DVR is operating in the "live view mode" or the "delayed view mode" to the claimed "first period of time." *See* Appx0259, Appx1229. Accordingly, the combination of *Dow* and *Russ* did rely on *Dow's* "live view" and/or "delayed view" modes. A time interval including when *Dow's* DVR is operating in either of those modes cannot be the claimed "first period of time." *See* Opening Br., pp. 55-57.

Next, DISH argues that DBS "mischaracterizes the teachings of *Dow* that expressly contemplate 'a time delay' in enabling commercial skipping." *See* Resp. Br., p. 51 (citing Appx0770 (24:43-48)). In its Opening Brief, DBS argued that "in *Dow's* pre-modified system, once an entire video program is recorded, the user may immediately playback the video program with or without commercials . . . In other words, *Dow's* pre-modified system does not impose any time-based restrictions on the user's ability to play back a[n entirely] stored video program without commercials." Opening Br., p. 60 (emphasis added). The "time delay" referenced by DISH does not apply to video programs that have been entirely recorded by the DVR; the "time delay" pertains to video programs that are being viewed while they are still being transmitted (i.e., *Dow's* "live view mode" or "delayed view mode") and thus "there is insufficient time to buffer and process events for identifying commercial groups." Appx0770 (24:43-48). Contrary to DISH's contentions, *Dow* does not contemplate the need to restrict commercial-skipping for fully recorded (and thus fully transmitted) video programs. It is improper to rely on DISH's fabricated teaching of *Dow* to support a motivation to combine *Dow* with *Russ*.

For the aforementioned reasons, the Board's determination that *Dow* and *Russ* teach or suggest claim element 1[d] is not supported by substantial evidence and should be vacated or reversed.

### F. ’710 Patent: The Board’s Finding That DISH Has Not Met Its Burden Regarding The Unpatentability Of Dependent Claim 17 Is Supported By Substantial Evidence.

DISH argues that the Board “improperly conflated obviousness with anticipation” and “ignored DISH’s obviousness theory” for claim 17. *See* Resp. Br., pp. 53-59. Neither is true. In reality, DISH’s obviousness theory was deficient, and thus the Board properly concluded that DISH failed to show that claim 17 is unpatentable.

“In an IPR, the burden of persuasion is on the petitioner to prove ‘unpatentability by a preponderance of the evidence,’ and that burden never shifts to the patentee.” *Google LLC v. IPA Techs. Inc.*, 34 F.4th 1081, 1086 (Fed. Cir. 2022) (quoting 35 U.S.C. § 316(e)) (emphasis added). “A petitioner may not rely on a vague, generic, and/or meandering petition and later fault the Board for failing to understand what the petition really meant. Ultimately, it is the petitioner’s burden to present a clear argument.” *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1377 (Fed. Cir. 2023).

Here is the entirety of the ’976 Petition’s obviousness analysis for claim 17 in view of *Casagrande* and *Russ*:

> Casagrande teaches storing the video program and the times of when a second portion of the video program begins and ends. *See supra* Claim 11;Ex[1002] ¶201. Casagrande also discloses receiving this information from a satellite. *See supra* Claim 10;Ex[1002] ¶202. Further, Casagrande teaches that "[t]he location information 706 may be transmitted to the receiving device 710 together or <u>separately</u> from the first A/V stream 704." Ex[1006], 12:52-54; <u>Ex[1002] ¶203</u>. Thus, a POSA would have understood that the location information that includes "each one of said at least one times" may be received <u>after</u> storage of the video stream and/or that receiving the location information after storage of the video stream would be obvious in view of Casagrande's teaching and suggestion. <u>Ex[1002] ¶204.</u>

Appx0250 (emphasis added). As shown, DISH mapped *Casagrande's* "location information 706" to the claimed "said at least one times." *See id*. But noticeably absent from the analysis is an explanation as to why a POSITA would have understood "separately" to mean *Casagrande's* "location information" (the Petitioner-identified "said at least one times") is received <u>after</u> storage of *Casagrande's* A/V stream. *See id*. DISH's expert provided no additional clarification:

> 203. Further, "[t]he location information 706 may be transmitted to the receiving device 710 together or separately from the first A/V stream 704." *Id.* at 12:52-54.
>
> 204. Therefore, I conclude that claim 17 is rendered obvious by Casagrande and the relevant skill of a POSA, either alone or in combination with Russ.

Appx0387.

In its Response, DBS argued that because *Casagrande's* Figure 7 shows different channels for "A/V stream 704" and the "location information 706," "separately" in *Casagrande* meant "on a different channel," not "at a different time." Appx1081-Appx1082 (citing Appx0718 (Fig. 7)). Figure 7 of *Casagrande* is reproduced below:




Appx0718 (excerpted and annotated); Appx1081. And even if "separately" meant "at a different time," both DISH and its expert still failed to explain why "at a

different time" meant "received by said DVR after said video program is stored on said memory device," as claim 17 requires. *See* Appx1081-Appx1082.

In its Reply, DISH criticized DBS for reading "separately" "overly narrow" and asserted that *Casagrande* describes "the communication interface 1502 may receive the supplemental content 1506 and the location information 1508 by employing the same technology used to receive the first A/V stream." Appx1224-Appx1225 (quoting Appx0740 (18:6-9)) (emphasis in original). But DISH still provided no explanation why *Casagrande's* teaching of "employing the same technology" either (a) discredited DBS's reading of "separately," or (b) met the expressly recited timing requirements of claim 17. *See id*. Accordingly, the Board's conclusion that "Petitioner has not shown by a preponderance of the evidence that claim 17 is unpatentable" is supported by substantial evidence.

DISH argues that its "theory was not that *Casagrande* expressly teaches that element, only that *Casagrande* renders obvious the element." Resp. Br., p. 53 (emphasis in original). But as explained by this Court, "[t]o satisfy its burden of proving obviousness, a petitioner cannot employ mere conclusory statements. The petitioner must instead articulate specific reasoning, based on evidence of record, to support the legal conclusion of obviousness." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007)). Here, because DISH did not provide any articulated reasoning,

the Board reached its conclusion based on DISH's cursory and conclusory arguments. That is not a misapplication of the obviousness standard: "the law of obviousness does not require the court, or the Board, to develop arguments for a limitation that the petition simply did not make." *AMP Plus, Inc. v. DMF, Inc.*, 131 F.4th 1320, 1325 (Fed. Cir. 2025).

DISH's reliance on *CRFD Research, Inc. v. Matal* is misplaced. *See* Resp. Br., p. 54 (citing *CRFD Research, Inc. v. Matal*, 876 F.3d 1330 (Fed. Cir. 2017)). In that case, the petition included (a) arguments that the challenged claims were anticipated by prior art *Bates*, and (b) different arguments that *Bates* alone or in combination with other references rendered the challenged claims obvious. *See CRFD*, 876 F.3d at 1344-46. The Board erred because when it considered the petition's obviousness grounds, the Board focused on the anticipation arguments for *Bates* instead of the separate obviousness arguments for *Bates*. *See id.* In the present case, however, the petition had only one set of arguments for *Casagrande,* and they were considered by the Board. *See* Appx0047-Appx0050 (citing Appx0250, Appx0387).

To support its reading that "separately" in *Casagrande* means a temporal separation, DISH now argues that its expert allegedly identified an embodiment in *Casagrande* where "the location information was sent in response to 'a query from the DVR after the program had been recorded.'" Resp. Br., p. 56 (citing Appx0327

(¶72), Appx0741 (20:18-47)). But that embodiment in *Casagrande* and paragraph 72 in the expert's declaration were never cited in the '976 Petition for claim 17. Appx0250. And the paragraphs of the expert's declaration discussing claim 17 also do not reference paragraph 72. Appx0386-Appx0387. "It is of the utmost importance that petitioners in the IPR proceedings adhere to the requirement that the <u>initial petition identify with particularity</u> the evidence that supports the grounds for the challenge to each claim." *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) (cleaned up) (emphasis added). DISH simply did not meet that requirement. This Court has "rejected, many times, post-hoc attempts on appeal to include additional, new arguments not contained in the petition." *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1377 (Fed. Cir. 2023). The Court should do the same here.

## III. CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons and all the reasons discussed in Appellant's Opening Brief, Appellant respectfully requests that the Court (i) vacate or reverse the Board's determinations that claims 1-16, 18, and 19 of the '710 Patent are rendered obvious by the cited art, (ii) vacate or reverse the Board's determinations that claims 1-20 of the '122 Patent are rendered obvious by the cited art, and (iii) affirm the Board's determination that claim 17 of the '710 Patent is not unpatentable.

Dated: September 5, 2025

<u>*/s/ Fred I. Williams*</u>
Fred I. Williams

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on September 5, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 5, 2025

*/s/ Fred I. Williams*
Fred I. Williams

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 25-1364

**Short Case Caption:** Digital Broadcasting Solutions, LLC v. DISH Networks L.L.C.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 8,048 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 09/05/2025

Signature: /s/ Fred I. Williams

Name: Fred I. Williams

Save for Filing